IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CREEKVIEW IP LLC,

        Plaintiff,

    v.

BESTBUY.COM, LLC,
BEST BUY STORES, L.P., AND
BEST BUY TEXAS.COM, LLC,

        Defendant.

C.A. No. 22-425-CFC

**JURY TRIAL DEMANDED**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
RULE 12(c) MOTION TO DISMISS**

Dated: July 19, 2022

Jeremy D. Anderson (No. 4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 658-5070 (Telephone)
janderson@fr.com

Neil J. McNabnay
Ricardo J. Bonilla
Michael Vincent
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 87701
(214) 747-5070 (Telephone)
mcnabnay@fr.com
rbonilla@fr.com
vincent@fr.com

**ATTORNEYS FOR DEFENDANTS
BESTBUY.COM, LLC,
BEST BUY STORES, L.P., AND
BEST BUY TEXAS.COM, LLC**

## **TABLE OF CONTENTS**

I.   NATURE AND STAGE OF THE PROCEEDINGS..........................................1

II.  SUMMARY OF THE ARGUMENT...................................................1

III. STATEMENT OF FACTS ........................................................2

IV. LEGAL STANDARDS ...........................................................4

    A. Fed. R. Civ. P. 12(c)...................................................4

    B. 35 U.S.C. § 101 .......................................................5

V.  ARGUMENT....................................................................7

    A. Claim 19 is representative. ............................................7

    B. *Alice* Step 1: The claims are directed to the abstract idea of authorizing wireless power transfer. ................................................9

    C. *Alice* Step 2: The claims contain no inventive concept to transform the abstract idea into patent-eligible subject matter. ........................13

    D. This case is ripe for disposition.................................15

VI. CONCLUSION ................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014)................................................................*passim*

*Alice Corp. Pty. v. CLS Bank Int'l,*
    573 U.S. 208 (2014)................................................................5, 6, 12, 13

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC,*
    966 F.3d 1347 (Fed. Cir. 2020) (Chen, J., concurring) ......................................10

*Ancora Tech., Inc. v. HTC Amer., Inc.,*
    908 F.3d 1343 (Fed. Cir. Nov. 16, 2018) .........................................................11

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
    687 F.3d 1266 (Fed. Cir. 2012) .......................................................................4, 6

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016) .......................................................................13

*Bilski v. Kappos,*
    561 U.S. 593 (2010)................................................................................4, 5, 6

*BSG Tech LLC v. Buyseasons, Inc.,*
    899 F.3d 1281 (Fed. Cir. 2018) .......................................................................2, 9

*Clarilogic, Inc. v. FormFree Holdings Corp.,*
    681 Fed. Appx. 950 (Fed. Cir. 2017) (Reyna, J.) .............................................10

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014) ........................................................................7

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) .......................................................................13

*Diamond v. Chakrabarty,*
    447 U.S. 303 (1980)......................................................................................4

*Diamond v. Diehr,*
    450 U.S. 175 (1981).......................................................................................5

*Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*,
   958 F.3d 1178 (Fed. Cir. 2000) ....................................................................14, 15

*Finjan, Inc. v. Blue Coat System, Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) ....................................................................9, 10

*Finnavations LLC v. Payoneer, Inc.*,
   No. 1:18-CV-00444-RGA, 2019 WL 1236358 (D. Del. Mar. 18, 2019)...........14

*Fort Props., Inc. v. Am. Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012) ............................................................................5

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017) ..........................................................................13

*Inventor Holdings, LLC v. Gameloft, Inc.*,
   135 F. Supp. 3d 239 (D. Del. 2015)......................................................................4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012)...........................................................................................5

*Morales v. Square, Inc.*,
   75 F. Supp. 3d. 716 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir.
   2015), *cert. denied*, 136 S. Ct. 1461 (2016) ......................................................8

*Nice Ltd. v. CallMiner, Inc.*,
   2020 WL 529709 (D. Del. 2020).........................................................................7

*Parker v. Flook*,
   437 U.S. 584 (1978)........................................................................................5, 11

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
   No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017)..........7

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ....................................................................8, 13

*In re TLI*,
   823 F.3d at 615 ...................................................................................................12

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J.,concurring) ...............................4, 6, 12

*Zimmerman v. Corbett*,
    873 F.3d 414 (3d Cir. 2017) .................................................................................3

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Creekview IP LLC filed its original Complaint against Best Buy Co., Inc. on

March 31, 2022. (D.I. 1.) Creekview alleges that Best Buy infringes U.S. Patent

No. 9,608,472 (the "'472 Patent"), entitled "Method and Apparatus for Wirelessly

Transferring Power and Communicating with one or more Slave Devices" because

of accused products "H Power 1 Port USB Wall Charger, H Power 2 Port USB

Wall Charger, Wireless Gear BL1489, and Dual Port Wall Charger." (D.I. 1, ¶¶ 14,

21, 28, and 35). Best Buy responded to the Complaint on May 25, 2022, by filing

an answer and counterclaims. (D.I. 8.)

On July 8, 2022, Creekview filed a Notice Regarding Coordination,

requesting the Court hold a joint scheduling conference four weeks after Zound

Industries USA Inc. responds to the Complaint. (D.I. 13.) That same day,

Creekview and Best Buy filed a Stipulated Motion to Substitute BestBuy.com,

LLC, Best Buy Stores, L.P., and Best Buy Texas.com, LLC for Best Buy Co., Inc.

(D.I. 14.) The motion was granted on July 11, 2022. (D.I. 15.)

## II.     SUMMARY OF THE ARGUMENT

Wireless charging is an abstract concept ineligible for patent protection. The

claims of the '472 Patent are directed to this abstract concept and do not claim any

inventive step sufficient to confer patent eligibility on the claimed abstract idea.

The claims do not recite specific hardware or software, but instead rely on generic

1

components (*e.g.*, "electronic circuitry") capable of "transmitting" and "receiving" an "identification." '472 Pat., cl. 11 and 19. Abstract ideas implemented with conventional components are not eligible for patent protection under 35 U.S.C. § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (2014). This is especially true if the abstract idea is not directed to any improvement in technology and any purported "inventive concept" is limited to improving the abstract idea itself. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

No discovery or claim construction is required to resolve this issue. Best Buy requests that the Court dismiss the Complaint pursuant to Rule 12(c) because judicial and party resources should not be wasted litigating invalid patent claims.

## III.    STATEMENT OF FACTS

The '472 Patent claims the idea of wireless charging between "master" and "slave" devices. *See* '472 Patent at Abstract, 1:62-66. The slave identifies itself to the master, which in return provides power. *Id*. at 3:8-17. Creekview identified Claim 19 in the Complaint:

| Claim Language | Claimed Idea |
|---|---|
| 19. A method for use by a slave device for generating power from energy wirelessly received from a master device, the method comprising: | A method for wireless charging comprising: |
| transmitting a slave device identification to the master device for determining authorization to wirelessly receive energy from the master device; | a power recipient identifying itself to a power source |
| wirelessly receiving, in response to transmitting the slave device identification to the master device, energy from the master device; and | in response to the identification, the power recipient receiving power wirelessly from the power source |
| generating power from the wireless energy received from the master device for use by a set of electronic circuitry of the slave device. | the power recipient generating power using the energy received from the power source |

Claim 19 can be practiced with nothing more than a generic power source and recipient—components necessary in all power transfer applications. Claim 19 states that a "device identification" is "for determining authorization," but it does not require that any authorization actually take place, much less authorization by a specific method.

The '472 Patent admits that wireless charging was conventional. '472 Pat. at 1:25 ("Induction is a common form for wireless power.") The claims do not improve that well-known process, but instead recite inconsequential limitations. *See, e.g.*, cls. 23-26 (slave comprises an induction coil, capacitor, battery, and

switch). The other claims introduce generic components such as antennae (cls. 2, 7, 13, 21), memory (cls. 27, 31), and processors (cls. 27, 31), and add nothing of consequence to raise the claims above the base abstract idea of wireless charging.

## IV.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(c)

A motion for judgment on the pleadings should be granted if the movant establishes that there are no material issues of fact, and [the movant] is entitled to judgment as a matter of law." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (internal quotation marks and citations omitted). "The ultimate question of patent eligibility is an issue of law, making it an appropriate basis for a Rule 12(c) motion." *Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 3d 239, 245 (D. Del. 2015) *citing In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd Bilski v. Kappos*, 561 U.S. 593 (2010). The § 101 inquiry is properly raised at the pleadings stage if it is apparent that the asserted claims are directed to ineligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring); *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

**B.    35 U.S.C. § 101**

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added).

Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski v. Kappos*, 561 U.S. 593, 611–612 (2010). In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). A two-step analysis must be taken to determine whether a patent claim is impermissibly directed to an abstract idea. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217 (internal quotations and citations omitted).

A patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). A claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski*, 561 U.S. at 602. Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e

6

perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101 . . . .").

## V.   ARGUMENT

The claims of the '472 Patent are invalid under § 101 because they fail both prongs of the *Alice* test. Under any plausible reading, the claims are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of wireless charging. *See Alice*, 573 U.S. at 220, 225. None of the claims contains an "inventive concept sufficient to ensure that the patent in practice amounts to **significantly more** than a patent upon the ineligible concept itself." *See id.* at 218 (emphasis added). Under FED. R. CIV. P. 12(c), Best Buy respectfully requests the Court grant its motion and dismiss Creekview's claims with prejudice Because Creekview has failed to state a claim.

### A.   Claim 19 is representative.

Claim 19 is representative of the '472 Patent's claims because it contains the same essential elements found throughout the other independent claims.[1]   *See Nice*

---

[1] *See Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming district court's use of a representative claim to focus its § 101 analysis because the claims were "substantially similar and linked to the same abstract idea"); *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a

*Ltd. v. CallMiner, Inc.*, 2020 WL 529709, at *8 (D. Del. 2020) (citing *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019)) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis). Claim 19 teaches a method for wireless charging comprising a slave device that identifies itself to a master device and receives energy in return. Independent claims 1, 6, 11, 27, and 31 recite essentially the same information.

Claim 1 is directed to a master device containing a power transmitter configured to wirelessly charge a slave device after identifying it. Claim 6 is directed to a method for wirelessly charging a device by first identifying it and then providing power. Claim 11 recites a slave device with electronic circuitry and a converter operable to identify itself, receive energy, and generate power from the wireless energy received. Claim 27 requires a device with a memory and processor operable to identify itself and provide power wirelessly. Last, Claim 31 is also directed to a method for use by a master device containing a processor, a power transmitter, and a memory. It identifies another device by matching it with information stored in a database before wirelessly charging it. In short, all of the

---

few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea").

8

independent claims are directed to substantially the same idea: a slave device identifying itself to a master device then receiving wireless power. The dependent claims do not alter the analysis because they comprise only inconsequential limitations such as specifying the type of generic components required, *e.g.* "a battery," "a capacitor," "a coil," "an antenna," etc. Accordingly, the § 101 inquiry may be conducted with Claim 19 as the representative claim.

**B.** *Alice* **Step 1: The claims are directed to the abstract idea of authorizing wireless power transfer.**

The Court must look past the claim language to determine what the invention is trying to achieve to determine whether it is an abstract idea. *Morales v. Square, Inc.*, 75 F. Supp. 3d. 716, 725 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). All Claim 19 explains is a method performed by a power recipient to identify itself to a power source, receive energy, and generate power.

The abstract idea inquiry begins by analyzing the "focus" of the claim, *i.e.*, its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that the district courts should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry

often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)); *see BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285-86 (Fed. Cir. 2018).

Here, the "claimed advance" of Claim 19 is purportedly restricting wireless charging only to the wireless device or devices that identifies itself (or themselves) the master device that is to supply the energy necessary to generate power, thereby avoiding the waste of energy from radiating out to any device in proximity.  But that is not a specific means or method for improving the existing wireless charging technology—if anything, it is only an improvement to the idea of how to perform charging wirelessly. The '472 Patent acknowledges that "[t]he master in some embodiments receives a slave's identifying information . . . by communicating with the slave or by examining the slave information database to select which slaves to power up, charge or communication with." '472 Patent at 8:58–9:1. That is, the claims direct a device to identify itself, request wireless power, and generate power. As such, the claimed invention is an "'abstract idea' for which computers are invoked merely as a tool." *Finjan* 879 F.3d at 1303.

The functional nature of Claim 19's limitations further supports its abstractness. The Step 1 analysis asks whether the claim is purely functional in

10

nature rather than containing the specificity necessary to recite how the claimed function is achieved. As Federal Circuit Judge Chen has commented, "while not all functional claiming is the same, simply reciting a functional result at the point of novelty poses serious risks under section 101." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 966 F.3d 1347, 1356 (Fed. Cir. 2020) (Chen, J., concurring) (citations omitted). Put simply, functional language is "the height of abstraction." *See, e.g.*, *Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 Fed. Appx. 950, 955 (Fed. Cir. 2017) (Reyna, J.). "Indeed, the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Elec. Power Grp.*, 830 F.3d at 1356.

Claim 19 does not describe how the desired result—wireless charging between master and slave devices—is achieved. All Claim 19 covers are the conventional acts of requesting power, identifying the requestor, and supplying energy. The way in which the steps are performed to improve the existing technology are not disclosed. As a result, the specific technique for accomplishing the steps is left to the reader. Claim 19 is thus impermissibly broad so as to disproportionately preempt the field of such techniques. The claims do not contain the specificity that may change claims from function-dependent (ineligible) to technology-improving (eligible). *Cf. Ancora Tech., Inc. v. HTC Amer., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. Nov. 16, 2018) (holding claims eligible because they

were directed to "a **non-abstract** computer-functionality improvement . . . done by a **specific technique** that departs from earlier approaches to solve a **specific computer problem**") (emphasis added).

The analysis is not altered by the fact that Claim 19 is limited to a particular technological environment (charging devices). "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp.*, 830 F.3d at 1354. As the Supreme Court explained in *Alice, Parker v. Flook,* 437 U.S. 584 (1978), stands for the proposition that the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment. *Alice,* 134 S. Ct. at 2358. Claim 19 is directed to an abstract idea even if its limitations require practicing that idea between a power source and receiver.

The other independent claims of the '472 Patent fare no better under this analysis: they complement the same abstract idea. Essentially, the claimed advance of the independent claims is the presence of generic components (*e.g.*, an antenna, a coil, electronic circuitry) and the practice of generic functions (*e.g.*, receiving and responding to requests). They still recite the same functionality: two devices configured for identification and power transfer. This concept is an abstract idea, not an invention. Accordingly, the claims fail the Step 1 of the *Alice* analysis.

12

**C.    *Alice* Step 2: The claims contain no inventive concept to transform the abstract idea into patent-eligible subject matter.**

Because Claim 19 is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (internal quotations omitted). To pass this test, Claim 19 "must include additional features" which "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotations and citations omitted).

Claim 19 is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea. There is simply nothing "inventive" about wireless charging using generic components. The abstract functional descriptions are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice*'s Step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Claim 19 merely instructs that the "slave device" is dependent on the "master device" to receive energy. This is similar to the *In re TLI* patent, which only provided that "the 'control unit' predictably 'controls' various aspects of the claimed functionality." *Id*.

Even when these basic functions are viewed "as an ordered combination," they do not reveal a "non-conventional and non-generic arrangement of known, conventional pieces" that might provide an inventive concept. *Cf. Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) (explaining that the claims at issue involved a technological solution that overcame a specific challenge unique to the Internet). Wireless charging is a long standing technology, and Claim 19 does not require the operation of any non-generic components. *See* cl. 19 (requiring an "electronic circuitry").

Further, there can be no inventive concept because the limitations of Claim 19 ("transmitting a slave device identification," "wirelessly receiving . . . identification," and "generating power") are themselves abstract. The law is clear that abstract limitations need not be considered in the Step 2 analysis. *SAP Am.*, 898 F.3d at 1168–69 (disregarding elements that "are themselves abstract" in Step 2 analysis); *see also Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017) ("[R]eceiving transmitted data over a network . . . merely implicates purely conventional activities that are the 'most basic functions of a computer.'"). Without these abstract limitations, Claim 19 is reduced to an abstract idea and cannot claim "something more." *Alice*, 573 U.S. at 217. Because it is devoid of any inventive concept, Claim 19 is patent-ineligible under § 101.

14

**D.      This case is ripe for disposition.**

This case is unlike *Berkheimer* or *Cellspin*, where the Federal Circuit held that plaintiffs' factual allegations were sufficient to establish at least a factual dispute as to whether the patents at issue claimed an inventive concept. In *Berkheimer*, the Federal Circuit noted the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." 881 F.3d 1360, 1369 (Fed. Cir. 2018). In *Cellspin*, the amended complaint identified "several ways in which its application of capturing, transferring, and publishing data was unconventional." 927 F.3d 1306, 1316 (Fed. Cir. 2019). Here, however, the Complaint says absolutely nothing about what the inventive feature is. Instead, the allegations leave the task of interpretation to the reader.

Last, allegations put forth in the Complaint regarding the procedure of prosecution before the USPTO should be disregarded. *See Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178 (Fed. Cir. 2000) (finding similar averments by plaintiff unavailing); *Finnavations LLC v. Payoneer, Inc.*, No. 1:18-CV-00444-RGA, 2019 WL 1236358, at *2 (D. Del. Mar. 18, 2019) ("All patents are issued by the Patent Office. . . . The issuance of a patent cannot and should not be a license to sue with abandon."). Here, Creekview avers that the '472 Patent received "a full and fair examination" before the USPTO (*see* D.I. 1, ¶¶ 7-9).

Creekview should not have the power to irrefutably declare that its claims are eligible simply because they passed through the USPTO's review process. *See Elec. Commun. Techs.*, 958 F.3d at 1178 ("These specific details relating to the procedure of prosecution before the USPTO bear no relationship to the subject matter . . . Nor do ECT's purported diligence and good faith during patent prosecution before the USPTO in any way shield the patent's claims from Article III review for patent eligibility.") The issue of patent eligibility is ripe for the Court's consideration.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter a judgment declaring the '472 Patent's claims invalid pursuant to 35 U.S.C. § 101 and dismiss Plaintiff's Complaint with prejudice

Dated: July 19, 2022                    FISH & RICHARDSON P.C.

                                        _/s/ Jeremy D. Anderson_____
                                        Jeremy D. Anderson (No. 4515)
                                        222 Delaware Avenue, 17th Floor
                                        Wilmington, Delaware 19801
                                        (302) 658-5070 (Telephone)
                                        janderson@fr.com

                                        Neil J. McNabnay
                                        Ricardo J. Bonilla
                                        Michael Vincent
                                        FISH & RICHARDSON P.C.
                                        1717 Main Street, Suite 5000
                                        Dallas, Texas 87701
                                        (214) 747-5070 (Telephone)
                                        mcnabnay@fr.com
                                        rbonilla@fr.com
                                        vincent@fr.com

                                        **ATTORNEYS FOR DEFENDANTS**
                                        **BESTBUY.COM, LLC,**
                                        **BEST BUY STORES, L.P., AND**
                                        **BEST BUY TEXAS.COM, LLC**

## **WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 3677 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Jeremy D. Anderson*
Jeremy D. Anderson